UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CONTRACT ASSOCIATES OFFICE INTERIORS, INC.,

    Plaintiff,

    v.

LETITIA A. RUITER, WORKSPACE SOLUTIONS, INC., and TEKNION, L.L.C.,

    Defendants.
_____/

AND RELATED COUNTERCLAIMS
_____/

NO. CIV. S-07-0334 WBS EFB

<u>ORDER RE: MOTION FOR SUMMARY JUDGMENT</u>

----oo0oo----

    Plaintiff and cross-defendant Contract Associates Office Interiors, Inc. ("Contract Associates") filed this lawsuit alleging that its former employee, defendant and cross-complainant Letitia A. Ruiter, and her new employer, defendant Workspace Solutions, Inc., utilized unlawful means to ensure the capture of Contract Associates' profitable E*Trade

1

account.[1]  Pursuant to Federal Rule of Civil Procedure 56, Ruiter now moves for summary judgment on each of plaintiff Contract Associates' claims alleged against her.[2]

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] Contract Associates recently amended its Complaint to add Teknion, L.L.C.--the furniture vendor that Contract Associates used in its design of the various E*Trade locations--as an additional defendant in this dispute.  Contract Assocs. Office Interiors, Inc. v. Ruiter, No. 07-0334, 2008 WL 2420586, at *1 (E.D. Cal. June 12, 2008).

[2] As referenced in its Complaint, Contract Associates' claims alleged against Ruiter consist of its (1) first claim for violation of the Computer Fraud and Abuse Act (CFAA), 18. U.S.C. § 1030; (2) second claim for breach of contract; (3) third claim for breach of the implied covenant of good faith and fair dealing warranting contract and tort damages; (4) fourth claim for breach of the duty of loyalty; (5) sixth claim for tortious interference with prospective economic advantage; (6) seventh claim for conversion; (7) eighth claim for deceit; and (8) ninth claim for unfair competition, Cal. Bus. & Prof. Code §§ 17200-17210.

[3] Alternatively, Ruiter moves for summary adjudication as to any part of Contract Associates' aforementioned claims as the court deems necessary.  The standard for summary adjudication is identical to the standard for summary judgment.  See Fed. R. Civ. P. 56(a) ("A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim.") (emphasis added); Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1200 (S.D. Cal.1998).  Therefore, the court's discussion of the summary judgment standard applies equally to Ruiter's motion for summary adjudication.

2

1        The party moving for summary judgment bears the initial
2   burden of establishing the absence of a genuine issue of material
3   fact and can satisfy this burden by presenting evidence that
4   negates an essential element of the non-moving party's case.
5   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).
6   Alternatively, the movant can demonstrate that the non-moving
7   party cannot provide evidence to support an essential element
8   upon which it will bear the burden of proof at trial.  Id.

9        Once the moving party meets its initial burden, the
10  non-moving party "may not rely merely on allegations or denials
11  in its own pleading," but must go beyond the pleadings and "by
12  affidavits or as otherwise provided in [Rule 56,] set out
13  specific facts showing a genuine issue for trial."  Fed. R. Civ.
14  P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v.
15  Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

16       Along with its opposition to the motion, Contract
17  Associates raised several evidentiary objections to affidavits
18  and deposition testimony relied upon in Ruiter's itemized
19  "Separate Statement of Undisputed Facts."  In order to properly
20  rule on each objection, the court converted the hearing on the
21  motion for summary judgment into a hearing on the evidentiary
22  objections.  By a separate written order, the court has now ruled
23  on Contract Associates' evidentiary objections.

24       As a preliminary matter, the court notes that Ruiter
25  filed the instant motion prior to issuance of the court's May 29,
26  2008 Order denying her co-defendant Workspace Solution, Inc.'s
27  separate motion for summary judgment.  Contract Assocs. Office
28  Interiors, Inc. v. Ruiter, No. 07-0334, 2008 WL 2225702, at *3

3

(E.D. Cal. May 29, 2008).  In its motion, Workspace Solution, Inc. contended that, because E*Trade purportedly intended to follow Ruiter and give its future business to whichever dealership she subsequently joined, Contract Associates could not establish a causal connection between Ruiter's conduct and any damages that Contract Associates may have suffered.  The court denied summary judgment, however, finding that Contract Associates had produced "evidence creat[ing] a triable issue as to whether Workspace Solutions disrupted both an economic relationship with E*Trade offering the probability of future economic benefit to Contract Associates and Ruiter's employment relationship with Contract Associates."  Id. at *2.

        Ruiter presently requests summary judgment on six of the eight claims alleged against her--breach of contract, breach of the implied covenant of good faith and fair dealing warranting contract damages,[4] breach of the duty of loyalty, tortious interference with prospective economic advantage, conversion, and deceit--based entirely on the identical argument that Contract Associates cannot prove Ruiter's conduct proximately caused any damages it may have suffered.  (Ruiter's Mem. in Supp. of Mot. for Summ. J. 11:19-22, 13:1-6, 14:22-23, 17:14-15, 19:22-24, 21:4-5, 22-28, 22:13-19, 25:5-8, 23-28.)  The court will thus incorporate by reference its prior Order's discussion regarding evidence demonstrating that E*Trade may have hesitated to shift its commitment to another dealership, at least with respect to

---

[4] Contract Associates' claim for breach of the implied covenant of good faith and fair dealing also incorporates tort-based allegations, which the court separately addresses below.

4

the projects included in the copied and deleted files, had Ruiter not allegedly misappropriated the E*Trade files from Contract Associates' database.[5]  Contract Assocs. Office Interiors, Inc., 2008 WL 2225702, at *2.  Accordingly, because a reasonable jury could infer that Ruiter's conduct caused Contract Associates' purported damages when she improperly copied/converted and deleted Contract Associates' work product, the court will deny Ruiter's motion for summary judgment with respect to the aforementioned claims.

The court now addresses Ruiter's summary judgment motion as it relates to the remaining claims--i.e., Ruiter's alleged violations of the CFAA and California's Unfair Competition Law, as well as her alleged breach of the implied covenant of good faith and fair dealing warranting tort damages.

On its first claim under the CFAA, Contract Associates present sufficient evidence that Ruiter may have violated the CFAA when she intentionally copied and deleted files from Contract Associates' protected computer database without their authorization and thereby caused damage.  See ViChip Corp. v. Lee, 438 F. Supp. 2d 1087, 1100 (N.D. Cal. 2006) (stating that to

---

[5] Ruiter was apparently aware that without the extensive work product she copied and deleted from Contract Associates' E*Trade account--which included several job quotes, customer design preferences, key contact information, pricing data, and intricate layouts based on specifications of five future E*Trade projects--she would be forced to start from scratch in order to generate new quotes, files, layouts, etc.  It is reasonable to assume that this is the fundamental reason why Ruiter copied the files.  Moreover, not only did Ruiter copy the pertinent files, but there is evidence that she also deleted several of Contract Associates' files.  This additional conduct could reasonably be viewed as an attempt to hinder Contract Associates' ability to subsequently submit competing quotes and/or proposals for the E*Trade projects at issue.

5

proceed to trial for a claim under the CFAA, a plaintiff must show that the defendant has "(1) intentionally accessed (2) a protected computer (3) without authorization, and (4) as a result of such conduct, has (5) intentionally, recklessly or otherwise caused (6) damage"); see also Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., --- F.Supp.2d ----, 2008 WL 1734771, at *6 (E.D. Cal. Apr. 14, 2008) ("Employees that access their employer's computers to obtain or delete business information for their own personal benefit or the benefit of a competitor act 'without authorization' or 'exceed authorization' within the meaning of the [CFAA]."); Pac. Aerospace & Elecs., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1196-97 (E.D. Wash. 2003) (stating that an employee who exceeds authorized access to an employer's computer may violate the CFAA).

     Ruiter admits that she accessed the computer system and copied and deleted files.  (Ruiter Dep. 69:1-5, 71:3-5.)  Ruiter also contends, however, that she did not cause the requisite "damage" necessary to maintain a claim under the CFAA, which contemplates that a party sustain damage or financial loss in an aggregate amount of at least $5,000.  18 U.S.C. § 1030(a)(5)(B)(i).

     "Damage" under the CFAA is defined as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data."  Id. § 1030(e)(11).  Within the context of these two definitions, a plaintiff's damage claim under the CFAA must be

6

"limited to economic damages." Id. § 1030(g).

"[I]n cases like this, where the offense involves unauthorized access and the use of protected information, the reasonable 'cost of responding to [the] offense' . . . will be different from such cost in a case where the primary concern is the damage to the plaintiff's computer system itself." SuccessFactors, Inc. v. Softscape, Inc., --- F. Supp. 2d ----, No. 08-1376, 2008 WL 906420, at *5 (N.D. Cal. Apr. 1, 2008). "[W]here the offender has actually accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm." Id. Thus, the cost of discovering the identity of the offender and the method by which the offender accessed the protected information, as well as the "many hours of valuable time away from day-to-day responsibilities" required to reasonably respond to the unauthorized access, may all be considered part of the loss for purposes of the CFAA. Id. at *4.

The Ninth Circuit has also held that, because "loss" under the CFAA is explicitly defined in terms of "economic damages," any loss of business and business goodwill constitutes recoverable damages under the CFAA. Creative Computing v. Getloaded.com L.L.C., 386 F.3d 930, 935 (9th Cir. 2004) (holding that, because the phrase "limited to economic damages" only "precludes damages for death, personal injury, mental distress, and the like," a defendant's objection to the CFAA plaintiff's inclusion of "damages for loss of business and business goodwill . . . is without force because those are economic damages") (emphasis added); see also United States v. Pierre-Louis, No.

00-434, 2002 WL 1268396, at *4 (S.D. Fla. Mar. 22, 2002) (recognizing "[t]he fact that Congress has amended the CFAA to now include consequential damages (including 'lost profits')"). To date, Contract Associates declares that, despite having already spent a substantial amount of money securing a computer consultant to recover some of the lost files that Ruiter deleted, it is still conducting costly forensic tests to determine the full extent to which its protected information was copied and/or deleted.  Contract Associates additionally alleges that, as a result of defendants' conduct, it has suffered lost profits of at least $186,723.00.

Accordingly, because there is a genuine issue of material fact whether Ruiter's conduct violated the CFAA, the court will deny her motion for summary judgment with respect to Contract Associates' CFAA claim.

Next, Ruiter seeks summary judgment on Contract Associates' claim that she violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210, when she engaged in the unlawful and unfair business practices addressed above.  The Unfair Competition Law has generally been held to cover a wide range of conduct, embracing "anything that can properly be called a business practice and that at the same time is forbidden by law." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (citations omitted). Section 17200, therefore, essentially "borrows" violations from other laws by making them independently actionable as unfair competitive practices under the Unfair Competition Law.  Id.

Because the court has found that the evidence could

8

allow a reasonable jury to infer liability on the part of Ruiter as to Contract Associates' other claims, it could also support a reasonable inference of Ruiter's section 17200 liability. See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., --- F.Supp.2d ----, 2008 WL 1734771, at *13-14 (E.D. Cal. Apr.14, 2008) ("[E]vidence supporting other alleged unlawful acts also support section 17200 liability."). Accordingly, the court will deny Ruiter's motion for summary judgment with respect to this claim.

Finally, while the court acknowledges above that a genuine issue of material fact remains as to whether Ruiter breached the implied covenant of good faith and fair dealing in the contract context, Ruiter correctly argues that Contract Associates' incorporation of tort-based allegations with this claim--which typically pertain only to insured-insurer relationships[6]--is inappropriate. See Cal. Fair Plan Ass'n v. Politi, 220 Cal. App. 3d 1612, 1618 (1990) ("[N]ot all breaches of the covenant of good faith and fair dealing result in tort liability."). To recover on a claim for breach of the implied covenant of good faith and fair dealing for the recovery of tort damages, Contract Associates must show that a special relationship exists in which all of the following factors are

---

[6] In Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1988), the California Supreme Court warned against arbitrarily finding the existence of this "special relationship" in the employment context because "[a]fter review [] and independent consideration of the similarities between the [insurance context and employment context], we are not convinced that a 'special relationship' analogous to that between insurer and insured should be deemed to exist in the usual employment relationship which would warrant recognition of a tort action for breach of the implied covenant." Id. at 692.

9

present:  (1) inherently unequal bargaining positions; (2) non-profit motivation for entering the contract; (3) ordinary contract damages are not adequate; (4) one party is especially vulnerable; and (5) the other party is aware of this vulnerability.  <u>Martin v. U-Haul Co. of Fresno</u>, 204 Cal. App. 3d 396, 413 (1988).  Due to the complete absence of evidence demonstrating either unequal bargaining positions or one party's conscious disregard of another's vulnerability, Contract Associates is left with only a series of conclusory declarations contending that Ruiter somehow took advantage of it during her negotiations in a manner constituting the requisite "special relationship."  <u>See</u> <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993) ("[W]hen the nonmoving party relies only on its own declarations to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

     Moreover, Contract Associates fails to address why ordinary contract damages, as opposed to tort damages, would be inadequate to address their alleged injury.  <u>See</u> <u>Ashton-Tate Corp. v. Ross</u>, 728 F. Supp. 597, 605 (N.D. Cal. 1989) (holding that where "ordinary contract remedy would make defendants whole for any breach of the agreement," there can be "no 'special relationship' here and no tort action for breach of the implied covenant of good faith and fair dealing").  Rather, its claim more accurately  represents a "'garden variety breach of contract' action for which only contract damages may be recovered."  <u>Cal. Fair Plan Ass'n</u>, 220 Cal. App. 3d at 1619 (citation omitted).  Accordingly, insofar as Contract Associates'

10

1  claim for breach of the implied covenant of good faith and fair
2  dealing incorporates tort-based allegations, the court will grant
3  Ruiter's motion for summary adjudication.
4         IT IS THEREFORE ORDERED that Ruiter's motion for
5  summary adjudication with respect to Contract Associates' claim
6  for breach of the implied covenant of good faith and fair dealing
7  warranting tort damages be, and the same hereby is, GRANTED; and
8         IT IS FURTHER ORDERED that Ruiter's motion for summary
9  judgment with respect to Contract Associates' claims for
10 violation of the CFAA, breach of contract, breach of the implied
11 covenant of good faith and fair dealing warranting contract
12 damages, breach of the duty of loyalty, tortious interference
13 with prospective economic advantage, conversion, deceit, and
14 violation of California's Unfair Competition Law be, and the same
15 hereby are, DENIED.
16 DATED:  August 5, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE