IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CONTRACT ASSOCIATES OFFICE
INTERIORS, INC.,

    Plaintiff,

v.

LETITIA A. RUITER, WORKSPACE
SOLUTIONS, INC., and TEKNION,
LLC,

    Defendants.
_____/

AND RELATED COUNTERCLAIMS.
_____/

NO. CIV. S-07-0334 WBS EFB

ORDER

    Previously pending on this court's law and motion calendar for October 29, 2008, were the following discovery motions: (1) Plaintiff Contract Associates' Motion against Defendant Workplace Solutions, Inc. (hereafter "Workspace") regarding Plaintiff's Request for Production, served August 15, 2008 [Docket No. 89]; (2) Plaintiff Contract Associates' Motion against Defendant Teknion LCC ("Teknion") regarding Plaintiff's Request for Production, served August 15, 2008 [83]; (3) Plaintiff and Cross-Defendant Contract Associates' Motion against Defendant/Cross-Complainant Letitia Ruiter regarding (a) Plaintiffs Interrogatories, served May 24, 2007, (b) Plaintiffs' Requests for Production, served August 15, 2008, (c) Plaintiff s Request

for Production, served August 27, 2007, and (d) Plaintiffs' Requests for Admissions, served August 15, 2008 [86]; and (4) Defendant/Cross-Complainant Ruiter's Motion against Plaintiff/Cross-Defendant Contract Associates to compel production of witnesses for deposition [80].

Appearing at the hearing on behalf of the parties were Kathleen Finnerty and Angela Diesch on behalf of Contract Associates; Mark Divelbiss on behalf of Workspace Solutions, Inc.; Shaye Harrington on behalf of Teknion, LLC; and Christopher Wohl on behalf of Ms. Letitia Ruiter. For the following reasons, the court grants in part, and denies in part, the parties' discovery motions, and denies all requests for sanctions.

I.  BACKGROUND

Plaintiff Contract Associates is in the business of designing and installing interior office spaces and selling office furniture in the commercial market. Amended Complaint ("Am. Compl."), at ¶ 7. Since 1990, Contract Associates has been an authorized dealer for Teknion office furniture; in 2006, Teknion was plaintiff's primary supplier, and Teknion products accounted for 80% of Contract Associates's total purchases. *Id*. at ¶ 8. A significant majority of these purchases were for Contract Associates' projects with E*Trade, a client of Contract Associates since 2004. *Id*. at ¶ 9.

Contract Associates employs both project managers (paid on a salary plus commission basis, primarily for in-house accounts), and commissioned sales associates (paid commissions based on a percentage of net profits, primarily from sales on their own accounts). *Id*. at ¶ 10.

In July 2003, Contract Associates hired Ms. Ruiter as a project manager, on a salary-plus-commission basis, to serve both plaintiff's in-house accounts and to seek her own business accounts. Ms. Ruiter's responsibilities included "furthering Contract Associates' relationship with its client E*Trade by determining and supplying its office furniture needs and working with office furniture vendors such as Teknion to procure that furniture." *Id.* at ¶ 11.

////

1       On May 1, 2006, at Ms. Ruiter's request, Contract Associates entered into a Commission Sales Compensation Contract ("Contract") with Ms. Ruiter, which provided that she would be paid on a commission-only. "Also pursuant to that Contract, Ruiter promised that any products she sold or any services she performed on behalf of or in representation of Contract Associates would be invoiced by Contract Associates. In exchange, Ruiter received 40% of the net profit from each product and service. Thereafter Ruiter worked exclusively on projects for Contract Associates' client, E*Trade." *Id.* at ¶ 12.

"On September 1, 2006, Ruiter tendered a written notice of resignation to Contract Associates effective on that date." *Id.* at ¶ 16. Ms. Ruiter informed Contract Associates that she would "finish out" three E*Trade projects for which plaintiff had purchase orders: Roseville, California, Alpharetta, Georgia, and Sandy, Utah. *Id.* At the hearing, the parties agreed that Ms. Ruiter completed her work for Contract Associates on these projects, and plaintiff does not state any claims or seek any damages based thereon.

On September 5, 2006, Contract Associates discovered that Ms. Ruiter had begun working for plaintiff's competitor, Workspace Solutions, Inc. *Id*. at ¶ 17.

Contract Associates thereafter discovered that, between May 2006 and September 2006, Ms. Ruiter worked on several E*Trade projects which she had not disclosed to plaintiff but instead taken to Workspace. Plaintiff alleges that Ms. Ruiter deleted and/or attempted to delete Contract Associates' computer files on these "secret projects" and transferred this information to Workspace. Although the complaint lists several projects that allegedly come within this category, *see, e.g*, Am. Compl., at ¶¶ 5, 40, the parties agreed in their discovery stipulations and at oral argument that plaintiff has stated claims based on the following five "undisclosed projects," and that any discovery thereon is appropriate: (1) Sandy, Utah, (2) Alpharetta, Georgia, (3) Charlotte, North Carolina, (4) Dulles, Virginia, and (5) Jersey City, New Jersey.

Plaintiff filed this action on February 20, 2007. On April 27, 2007, Ms. Ruiter filed a cross-claim against Contract Associates alleging unpaid wages, improperly withheld

3

commissions, breach of contract, and unfair business practices. Dckt. No. 12. Teknion was added as a defendant by the amended complaint lodged April 30, 2008, and effectively filed by order of the court on June 12, 2008,[1] at which time the court re-opened discovery until September 25, 2008. Dckt. Nos. 32, 56. Discovery had previously closed on April 30, 2008. Dckt. No. 13.[2]

---

[1] Contract Associates makes the following claims pursuant to its Amended Complaint:

Count I: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030
   (against Ms. Ruiter and Workspace);
Count II: Breach of Contract
   (against Ms. Ruiter);
Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing
   (against Ms. Ruiter);
Count IV: Breach of Duty of Loyalty
   (against Ms. Ruiter and Teknion);
Count V: Tortious Interference with Contract
   (against Workspace and Teknion);
Count VI: Tortious Interference with Economic Relationship and Prospective Economic Advantage (against all defendants);
Count VII: Conversion
   (against all defendants);
Count VII: Deceit
   (against Ms. Ruiter and Teknion); and
Count VII: Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)
   (against all defendants).

Dckt. No. 3. Plaintiff seeks "an accounting for and imposition of, a constructive trust upon all monies" received illegally by defendants, restitution, disgorgement of unlawfully obtained economic benefits, and "compensatory, exemplary, statutory and punitive damages." *Id.*, Prayer for Relief, Am. Compl. at p. 14.

[2] The district judge granted plaintiff's last-minute motion to amend the complaint to add Teknion due to an existing conflict in counsels' schedules regarding the impending trial in this action, and in an effort to conserve judicial resources by avoiding a separate action against Teknion which would likely be consolidated with the instant case. The district judge reasoned:

> Ordinarily, under these circumstances, the court would find that plaintiff's request comes too late. *Plaintiff had ample time to discover the role that Teknion played in Ruiter's resignation and her alleged disloyalty to plaintiff before the close of discovery and motion cut-off date.* However, in Ruiter's opposition to plaintiff's motion, and at oral argument, counsel has informed the court that he has a scheduling conflict with the October 7, 2008 trial date. (Ruiter's Mem. in Opp'n to Mot. to Amend 5:21-28.) Plaintiff's counsel indicated at oral argument that her earliest availability for rescheduling the Final Pretrial Conference and trial would not be until January 2009. If plaintiff's motion to amend is denied, plaintiff could

On August 6, 2008, the district judge granted Ms. Ruiter's motion for summary judgment on Contract Associates' request for tort damages based on its claim that Ms. Ruiter breached the implied covenant of good faith and fair dealing. Dckt. No. 76. The motion was denied as to all remaining legal and damages claims, upon which this case proceeds. *Id.*

On September 26, 2008, this court approved the parties' stipulation extending the discovery deadline in this case to November 24, 2008, in order to resolve the present motions. Dckt. No. 79. Trial remains scheduled to commence February 18, 2009. Dckt. No. 56.

The parties' joint stipulations on each of the pending discovery motions demonstrates compliance with the meet and confer requirements of Local Rule 37-251.

## II. DISCUSSION

### A. Discovery of "Unknown" E*Trade Projects

The first three discovery motions dispute plaintiff's efforts to obtain from defendants information beyond the "five undisclosed projects" that Ruiter acknowledged she worked on while at Contract Associates and took to Workspace. Plaintiff seeks to obtain any and all electronic and documentary evidence, to the present date, of communications, accounts, payments, orders or projects: (1) between E*Trade and Workspace (plaintiff's discovery requests served upon Workspace); (2) involving Teknion products purchased by Workspace for its E*Trade accounts (plaintiff's discovery requests served upon Teknion); and (3) involving Ms. Ruiter and E*Trade, Workspace and/or Teknion (plaintiff's discovery requests served upon Ms. Ruiter). Plaintiff asserts discovery of this information is supported by its amended complaint,

---

file a separate action against Teknion, and the court would most likely consolidate it with this action for purposes of judicial economy. Given that the court must reset the Final Pretrial Conference and trial dates due to counsels' scheduling conflicts, and given that a separate action later consolidated with this action would be tantamount to granting this motion, the court finds good cause for granting the motion to amend. There is no prejudice to defendants because a new round of discovery will ensue whether Teknion is named a defendant in this action or in a separate action.

*See* Order, Dckt. No. 56, filed June 12, 2008 (fns. omitted, emphasis added).

5

which seeks all damages "proximately caused" by, or "proximately resulting" from, defendants' alleged misconduct.

Defendants respond that to date, on the eve of discovery cutoff and trial, plaintiff has expressly limited its damages claim to the five undisclosed E*Trade accounts, and that to now permit discovery beyond those accounts would require reopening all discovery, including redeposing several witnesses. Defendants argue that the allegations of the amended complaint, including the alleged details of defendants' wrongful acts, and the facts alleged relative to causation, are limited to projects Ms. Ruiter worked on while still at Contract Associates. Defendants also direct the court's attention to the positions taken by Contract Associates in previous discovery, including (1) plaintiff's October 2007 interrogatory response limiting its damages claim to the five undisclosed projects;[3] (2) the narrowing of discovery to the five undisclosed projects by plaintiff's counsel, Ealon A. Hubbert, in exchange for the withdrawal of Workspace's motion to quash plaintiff's October 2007 subpoena duces tecum upon Teknion (then a third party); (3) the November 2007 depositions of plaintiff's owners, Ann and Robert Antonelli, in which their testimony concerning damages was limited to the five undisclosed projects; and (4) evidence that plaintiff never had a reasonable expectation of future work or profits from E*Trade, based on the March 2008 deposition testimony of E*Trade Assistant Director of Corporate Facilities and Real Estate, Tom Gaffney, that E*Trade's business followed Ms. Ruiter, and he had no intention of further contracting with plaintiff Contract Associates once Ms. Ruiter left.

Plaintiff replies that (1) it only became aware, pursuant to Mr. Gaffney's March 2008 deposition, of the potential breadth of damages caused by defendants' alleged misconduct

---

[3] Defendants reference Contract Associates' October 2007 response to Ruiter's interrogatory, "[p]lease identify each alleged 'loss of financial benefits' that resulted from Ruiter's contractual breach." Contract Associates' October 26, 2007 response provided, "[t]he loss due Contract Associates would amount to the difference between the dealer's commission on the *five projects previously identified* and Contract Associates' costs, as well as any mark up on installation labor." *See* Dckt. No. 83, at pp. 11-12 (emphasis added).

6

(however, plaintiff does not elaborate); (2) Contract Associates' September 11, 2008, supplemental response to Ms. Ruiter's interrogatory concerning plaintiff's damages claim makes it clear that plaintiff seeks "revenues and commissions attributed to other E*Trade projects that Workspace Solutions acquired in addition to the undisclosed projects;"[4] (3) the deposition answers of Ann and Robert Antonelli were based on the information available to them at the time; (4) co-counsel's narrowing of the subpoena duces tecum upon Teknion was limited to the period when Teknion was a third party and offered as a resolution to Workspace's motion to quash; (5) the stipulated protective order entered into November 2007 obviates any privacy, trade secret or other confidentiality concerns; (6) this information is "vital" to plaintiff's damages claim and necessary for plaintiff adequately to depose Teknion's Person Most Knowledgeable; and (7) all facts concerning causation and damages should be discovered and submitted to the trier of fact.

The court has considered these matters from the several perspectives offered by the parties, including (1) the parties' respective constructions of the amended complaint to assess whether the disputed discovery is relevant, (2) defendants' contention that plaintiff's discovery responses to date, with the exception of its recent September 2008 supplemental interrogatory response, are limited to the five undisclosed projects and plaintiff has thereby "waived" any other "new" claim for damages; (3) defendants' contention that, for the same reason, plaintiff

---

[4] Contract Associates' September 11, 2008 supplemental response provided in pertinent part: " . . . Contract Associates' losses amount to the difference between the dealer's commissions on the five undisclosed E*Trade projects previously identified and Contract Associates' costs and any markup on installation labor, as well as, the dealer's commission on other E*Trade projects acquired by Workspace as a result of the Defendants' wrong doing and misappropriation of Contract Associates' client information and good will. . . . The revenue and resulting commissions on E*Trade projects or office furniture orders that resulted from Defendants' conduct of secreting away the undisclosed projects to Workspace Solutions, as well as those *revenues and commissions attributed to other E*Trade projects that Workspace Solutions acquired in addition to the undisclosed projects,* are revenues and profits which Contract Associates reasonably expected and should have been able to enjoy, but for the actions, inactions, and/or other conduct of Ms. Ruiter – conduct that frustrated Contract Associates' competitive advantage and its relationship with E*Trade . . . ." *See* Dckt. No. 83, at pp. 15-16 (emphasis added).

should be "[judicially] estopped" from asserting any other damages claims; (4) plaintiff's contention that the discovery it seeks is essential to the trier of fact's assessment of causation and damages; and (5) defendants' position that discovery will need to be reopened if plaintiff is authorized to pursue the discovery it seeks.[5]

Only the first of these approaches fully embraces the considerations this court must make. These circumstances do not present a question of judicial estoppel because there has been no reliance by the court on an inconsistent position of plaintiff.[6] Nor may discovery trump the parties' pleadings to define the parties' claims and defenses. Rather, the guiding principle for determining whether discovery is permissible is relevance, as defined by the parties' pleadings.

As set forth in Fed. R. Civ. P. 26(b)(1): "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

---

[5] As the court stated at the hearing, the parties, to some extent, conflate discovery and evidentiary issues. Since defendants may rely on plaintiff's verified discovery responses to date, to cross-examine and impeach plaintiff's witnesses at trial, attempting to reopen discovery may not be their best strategy.

[6] As the Supreme Court explained in *Zedner v. United States*, 547 U.S. 489, 504 (2006)):

" '[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' *Davis v. Wakelee*, 156 U.S. 680, 689 [](1895). This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 [](2000).' " *New Hampshire v. Maine*, 532 U.S. 742, 749 [] (2001).

"Although this estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, [¶ ] 'several factors typically inform the decision whether to apply the doctrine in a particular case:  First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' *Id*., at 750-751 (citations and internal quotation marks omitted)." *Zedner*, 547 U.S. at 504.

discovery of admissible evidence." Relevancy at this stage of an action has been construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (*citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, *supra*, 329 U.S. at 507. "[L]imitations come into existence when the inquiry touches upon the irrelevant . . . ." *Id.*

It is the court's role, when disputes arise, to draw the boundary between relevant and irrelevant discovery, and this endeavor is necessarily guided by the parties' claims and defenses as set forth in their pleadings, in this instance, in plaintiff's amended complaint.

Careful review of the amended complaint demonstrates the following. While it is true that the factual allegations of the amended complaint, including defendants' alleged wrongful acts, and the facts alleged relative to causation, are generally limited to projects Ms. Ruiter worked on while still at Contract Associates, plaintiff's legal claims are broader in scope. For example, plaintiff states a claim for tortious interference with prospective economic advantage,[7] which, if proven at trial, requires the trier of fact to assess damages "proximately caused by defendants' acts." Such assessment may include consideration of lost profits beyond those encompassed by the specific projects Ms Ruiter allegedly moved from Contract Associates to Workspace, e.g., pursuant to plaintiff's claim its damages include loss of "good will."[8] To

---

[7] In order to state a claim for tortious interference with prospective economic advantage, plaintiff must prove the following elements: "(1) an economic relationship containing the probability of future economic benefit, (2) defendant's knowledge of that relationship; (3) intentional acts on the part of defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to plaintiff proximately caused by defendant's acts." *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1429 (9th Cir. 1993).

[8] "[T]he appropriate factors to be considered in measuring the 'good will' or going concern value of a business are: '(1) What profit has the business made over and above an amount fairly attributable to the return on the capital investment and to the labor of the owner? (2) What is the reasonable prospect that this additional profit will continue into the future, considering all circumstances existing and known as of the date of the valuation?' *Standard Oil*

9

1 foreclose discovery on these claims would require this court to accept the merits of defendants'
2 defenses based on the current evidentiary record, i.e., in essence, to act as the trier of fact.[9] Thus,
3 it is the assessment of this court that the amended complaint encompasses damages claims
4 beyond those associated with the five undisclosed projects or any other undisclosed project that
5 Ms. Ruiter may directly have taken from Contract Associates to Workspace. Plaintiff is entitled
6 to discovery beyond the scope of these claims in order to assess intangible or unliquidated
7 damages that may be "proximately caused" by Ms. Ruiter's alleged conduct, but are not directly
8 attached to the five allegedly misappropriated projects.

9 However, defendants express concern, appropriately, that plaintiff's instant discovery
10 requests are temporally open-ended, seeking information about all potential lost profits not only
11 up to the present date, but conceivably seeking additional information through trial. A balance
12 must be struck between plaintiff's right to obtain relevant information, and defendants' need for
13 reasonable parameters in responding to plaintiff's discovery requests. These parameters are best
14 established by looking to the first discovery deadline in this case, i.e., April 30, 2008. As
15 explained below, that cutoff date will be used as the temporal cap for obtaining discovery under
16 the instant discovery requests. While concededly discretionary, the choice is not arbitrary.

---

*Co. v. Moore, supra,* 251 F.2d [188] at 219 [9th Cir. 1958]; *Simpson v. Union Oil Co.*, 411 F.2d 897, 908-909 (9th Cir.), *rev'd on other grounds*, 396 U.S. 13 [](1969)." *Knutson v. Daily Review, Inc.*, 383 F. Supp. 1346, 1387 (D.C. Cal. 1974), *modified in part*, 401 F. Supp. 1374 (1975), and *aff'd in part*, 548 F.2d 795 (1976).

[9] For example, defendants argue that, commencing May 2006, Ms. Ruiter became an at-will, commission-only, employee whose Contract with plaintiff did not include a covenant to refrain from competition upon termination of their relationship, or prohibit her from engaging in independent business negotiations with E*Trade, Teknion or Workspace. However, the "privilege of competition" protects the honest competitor, and this defense must be left to the trial court's consideration. "[A] firm's interference with another's prospective economic relation falls within the privilege of competition as long as: (1) the relation concerns a matter involved in the competition between the firm and the other; (2) the firm does not employ wrongful means; (3) the firm's action does not create or continue an unlawful restraint of trade; and (4) the firm's purpose is 'at least in part' to advance its interest in competing with the other." *Los Angeles Land Co., supra*, 6 F.3d at 1431 (citing *A-Mark Coin Co. v. General Mills, Inc.,* 148 Cal.App.3d 312, 323 (2nd Dist. 1983) (quoting Restatement (Second) of Torts § 768)).

This court is required to limit the extent of discovery if it determines, *inter alia*, that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). The district judge found, on June 12, 2008, that plaintiff had "had ample time" to discover the role that Teknion played in Ms. Ruiter's resignation – and therefore, implicitly, to accomplish all other discovery in this case – before the close of the first discovery deadline on April 30, 2008. *See* fn. 2, *supra*. The district judge extended the discovery deadline for the principal purpose of obtaining discovery specific to Teknion, and the discovery deadline was again extended by this court only to permit resolution of these disputes. The district judge's assessment that "plaintiff had ample time . . . . before the close of discovery" to make essential inquiries concerning Teknion's role, *see id*., is consistent with this court's assessment that plaintiff "had ample opportunity to obtain the information" it now seeks by the same deadline. Fed. R. Civ. P. 26(b)(2)(C). The discovery plaintiff now seeks could have been requested of defendants in a far more timely manner, even based upon plaintiff's own statement that it only became aware of the potential breadth of damages caused by defendants' alleged misconduct pursuant to Mr. Gaffney's March 2008 deposition. Had plaintiff then propounded the discovery currently in dispute, the matter could have been judicially resolved, if necessary, with sufficient time for defendants to propound their own responsive discovery, and the dates of discovery would not remain open-ended. Defendants should not now be prejudiced by plaintiff's dilatory conduct.

In addition, it is the judgment of this court that any information relevant to plaintiff's damages, including any extended damages "proximately caused" by Ms. Ruiter's alleged illegal conduct, will be disclosed pursuant to discovery ending April 30, 2008. This date is more than a year-and-a-half after Ms. Ruiter left Contract Associates, and provides a reasonable window within which to assess the extent of plaintiff's damages, particularly in the absence of a noncompetition agreement.

////

The court therefore concludes that plaintiff may seek additional information concerning any additional "undisclosed projects" Ms. Ruiter may have worked on while still at Contract Associates, and any additional "unknown projects" in which E*Trade has contracted with Workspace or Teknion, or in which Ms. Ruiter has been involved at Workspace, up to and including the original date for close of discovery, April 30, 2008.  Accordingly, defendants will be directed to provide supplemental discovery responses to plaintiff's discovery requests, encompassed by the first three motions in this proceeding, but only for the requested periods up to and including April 30, 2008.

B.  <u>Plaintiff's Requests for Admissions to Ruiter</u>

The only matter remaining within the first three discovery motions are Plaintiffs' Requests for Admissions to Ms. Ruiter, served August 15, 2008, Nos. 1, 2, 3, and 31.[10]  Counsel for Ms. Ruiter agreed at the hearing to provide adequate supplemental responses to each request,

---

[10] These requests and the initial responses thereto provide:

**Request for Admission No. 1**:  Admit that Plaintiff paid YOU a total commission of fifty-three thousand one hundred fifty-five dollars and eighty-three cents ($53,155.83) on the E*Trade project known as Sandy Floor 3 and 6.
**Request for Admission No.2**: Admit that Plaintiff paid YOU a total commission of seventy thousand ninety-seven dollars and twenty-two cents ($70,097.22) on the E*Trade project known as Alpharetta Technology.
**Request for Admission No.3**: Admit that Plaintiff paid YOU a total commission of twelve thousand five hundred thirty-three dollars and eighty-six cents ($12,533.86) on the E*Trade project known as Roseville.

> **Responses to Requests for Admission Nos.1, 2 and 3:**  Responding party is unable to admit or deny this request because CAOI [plaintiff ] refuses to produce a witness under FRCP Rule 30(b)(6) to explain, among other things, how commissions were determined, calculated, and allegedly paid.

**Request for Admission No. 31**:  Admit Defendant used electronically stored information or computer files or data taken from Plaintiff pertaining to the E*Trade project known as Dulles to generate a quote on the Dulles project on September 5, 2006.

> **Response to Request for Admission No 31:**  Responding party admits that she used in information regarding this proposed project but this proposal could be generated in an hour or two.

*See* Dckt. No. 94, pp. 21-26.

including "project specific" responses to Nos. 1, 2, 3, and it will be so ordered.

### C. Further Deposition of Ms. Ann Antonelli

The fourth discovery matter, defendant Ruiter's motion to compel further deposition of Ms. Ann Antonelli, will be granted in part, and the deposition limited to Ms. Antonelli's role as Contract Associate's "person most knowledgeable" ("PMK"). At the hearing, plaintiff designated Ms. Antonelli as Contract Associates' PMK for purposes of deposition pursuant to Fed. R. Civ. P. 30(b)(6). Counsel for defendant Ruiter stated that he required no more than two hours to conduct such deposition, which plaintiff did not oppose. The court will therefore order such deposition at a date and time to be decided by the parties, and subject to the limitations set forth below. As a result, defendant's motion to compel further deposition of Ms. Antonelli as a percipient witness will be denied. Fed. R. Civ. P. 30(a)(2)(ii), 26(b)(2) (absence of good cause because discovery will be obtained pursuant to Rule 30(b)(6) deposition).

The PMK deposition of Ms. Antonelli by counsel for Ms. Ruiter shall not exceed two hours in length, and shall not repeat questions previously posed to Ms. Antonelli, but shall be limited to questions based upon her June 2008 production of additional documents responsive to Ruiter's Request for Production of Documents Nos. 6 and 10, any matters relevant to the additional discovery permitted by this order.[11]

### D. Requests for Sanctions

All parties seek sanctions on their respective discovery motions. Rule 37(a), Federal Rules of Civil Procedure, provides that an award of reasonable expenses shall be made to a prevailing party unless the position of the nonprevailing party was substantially justified or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A) and (B). If a discovery motion is granted in part and denied in part, the court may apportion the reasonable

---

[11] The court is cognizant that this deposition is likely to be scheduled in tandem with Teknion's fact deposition of this witness. Should the deposition be done in tandem, then, as noted at the hearing, counsel other than Teknion shall be permitted to ask questions in follow up to those asked by Teknion.

expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

In granting in part and denying in part each of the foregoing motions, the court finds that the parties' respective positions, as set forth in the extensive joint stipulations and presented at hearing, are each substantially justified as reasonable advocacy positions, and that the reasonable expenses associated with each motion have already been duly apportioned. Accordingly, all requests for sanctions will be denied.

III.  CONCLUSION

Plaintiff Contract Associates' Motions against (1) Defendant Workplace Solutions, Inc. [Docket No. 89]; (2) Defendant Teknion LCC [83]; and (3) Defendant Letitia Ruiter [86], are hereby GRANTED IN PART and DENIED IN PART. Defendants shall provide supplemental responses to plaintiff's discovery requests as set forth herein;

Defendant Ruiter's motion to compel the deposition of Ms. Ann Antonelli [80] is GRANTED IN PART, subject to the limitations set forth herein;

All parties shall PROVIDE VERIFICATIONS for any previously provided discovery responses for which verification is presently lacking;

The requests of all parties for sanctions are DENIED.

SO ORDERED.

DATED: November 7, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE